### WIDMEYER v. FELTON.

(Circuit Court, S. D. Ohio, W. D. July 11, 1899.)

No. 5,195.

1. MALICIOUS PROSECUTION—PROBABLE CAUSE — RELIANCE ON STATEMENTS OF OTHERS.

A person, in instituting a criminal prosecution, is justified in acting on the assumption that others who have given him information told the truth, unless there are facts or circumstances to put him on inquiry.

2. SAME—STATEMENTS OF ACCOMPLICE.

To constitute probable cause which will justify the institution of a criminal prosecution, it is only necessary that there should be evidence which reasonably warrants a belief in the guilt of the accused,—it need not be sufficient to insure a conviction; and the fact that a prosecution is based on evidence or statements of an alleged accomplice is not sufficient to establish a want of probable cause.

3. SAME—ADVICE OF COUNSEL.

The receiver of a railroad cannot be held liable for malicious prosecution because of a prosecution instituted by a detective employed by him on evidence and information which he had fairly submitted to the superintendent of the road and its general counsel, and by direction of the latter to the county attorney within whose jurisdiction the alleged offense was committed, who deemed it sufficient and drew the complaint.

On Motion by Defendant for Direction of a Verdict.

Sidney G. Stricker and Francis J. Hanlon, for plaintiff.
Harmon, Colston, Goldsmith & Hoadly, for defendant.

THOMPSON, District Judge (orally). In this case the plaintiff claims that defendant put the law in motion against him on a criminal charge, and afterwards followed up the prosecution of the charge until the plaintiff was acquitted on trial before a jury, and that the proceeding against him was malicious and without reasonable or probable cause. The evidence of the plaintiff has been submitted, and the defendant, demurring to it, asks that the jury be instructed to return a verdict for him upon the ground that, assuming the evidence to be true, it fails to show a want of reasonable and probable cause for the prosecution, but, on the contrary, shows there was reasonable and probable cause therefor.

It is necessary to understand the relation to each other of the different persons connected with this transaction. The defendant is the receiver of a railroad company, and in this matter acted through agents and employés. Kates was in the employ of defendant as a special detective. He was employed in view of the fact that for some time cars of the railroad company in the division next to Cincinnati, especially about Erlanger, a station in Kentucky, had been subject to depredation. A great many depredations had been committed by breaking into the cars and stealing therefrom, and in view of this fact, and for the purpose of protecting the company, Kates was employed as a special detective to hunt up the perpetrators, and procure evidence against them which would warrant their prosecution and punishment; and, up to the time this prosecution was instituted, that was the only employment he had. The employment was general, and not specially directed against the plaintiff, but against all perpetrators of crime against the property of the railroad company. He was not the agent of the defendant, at any time, to determine whether a prosecution should be instituted against the plaintiff or against anybody else. In his capacity as a detective he followed up the plaintiff and some of his associates, and obtained certain evidence, which he thought warranted a prosecution. He went to Murphy, the superintendent of this division of the road, and laid this evidence before him, and was directed to report to the general counsel of the road, Mr. Colston, and lay the same evidence before him, and take his advice and instruction. Mr. Colston was thereby constituted the agent of the defendant for that purpose, and stood in the place of and represented the defendant, just as Murphy, the superintendent, did. The facts were laid before Mr. Colston, who believed they were sufficient to make a case justifying the arrest and prosecution of plaintiff, but, out of abundance of caution, according to what seems to be the practice in such cases with properly managed railroads, he referred the matter to Simmons, the county attorney of Kenton county, Ky., for his advice; stating that if he (the county attorney) agreed with him, or believed a prosecution could be sustained, then he (Kates) should proceed to take the necessary steps to cause the arrest of the plaintiff and his prosecution upon the criminal charge of breaking into cars and stealing therefrom. The county attorney, after consideration of the facts laid before him, and some particular inquiries, addressed to Kates, as to what the witnesses would swear, gave the opinion that the case might be sustained, and prepared an affidavit for the arrest of the plaintiff. It was then, for the first time, that Kates was constituted an agent authorized to cause the arrest and prosecution of the plaintiff. I mean a ministerial agent to make the affidavit, procure the warrant, see that the arrest was made, and render such assistance to the officers of the law in carrying on the prosecution as is usually expected of a prosecuting witness in such cases. The determination to prosecute—the decision that there was a case justifying prosecution—was the act, not of Kates, but of the defendant, acting through a general agent with full powers, to wit, the general counsel of the road, Mr. Colston. Now, there is no dispute that certain facts were laid before Murphy, Colston, and Simmons, and there is no dispute as

to what those facts were, but it is claimed by the plaintiff (1) that these facts in themselves were insufficient to show reasonable and probable cause for the prosecution, but showed want of it; (2) that material facts within the knowledge of Kates were omitted from the statement made to counsel; (3) that Kates did not believe the plaintiff was guilty, but sought his prosecution and conviction for private gain, and not for the public good; (4) that the circumstances of the case are such as require the submission of the question to the jury.

Assuming that Kates, as the agent of the defendant to hunt up the perpetrators of this crime and procure evidence to warrant their arrest and prosecution, was bound to make full disclosure of all the facts, and that the defendant was responsible for his failure to disclose any material fact, what were the facts which it is alleged were omitted, and were they material? I endeavored to take down the substance of these alleged facts from the statement of counsel who submitted an argument in opposition to this motion, and they are these: (1) That Kates and Tully were out of work, and looking for jobs from the railroad company; (2) that Kates had correspondence with Superintendent Murphy two weeks before this arrest on the subject of the arrest and prosecution; (3) that he was shadowing and hunting the plaintiff down for a reward, and with a view to obtaining a job; (4) that there was an agreement between Kates and Tully to share and divide the reward,—to share with each other in any reward paid for the conviction of the perpetrators of this crime,—and an agreement, also, on the part of Kates, to get a job for Tully on the railroad; (5) that the railroad management was friendly to Kates, and that Kates held that out to Tully, to encourage him in the belief that he could get a job for him; (6) that everything that Tully did in the matter was by and at the suggestion and under the direction of Kates; (7) that Kates did not see Widmeyer at Erlanger, and did nothing towards arresting the men whom he did see there; (8) that Simmons advised him that corroboration connecting the plaintiff with the crime was necessary, under the statutes of Kentucky; (9) that Kates did not go to Simmons, as instructed by Mr. Colston, for more than a week after the interview with Mr. Colston, and after having first seen 'Squire Wheeler, and endeavored to procure an affidavit, without first going to Simmons; (10) that he (Kates) misrepresented the testimony of Baldwin, and falsely stated that he could produce an important witness, one Garrity; (11) that Kates called on the plaintiff in jail, and offered to see that he got out of the trouble if he would disclose what had become of some silverware; (12) Kates' conduct in procuring a confession from Kells; (13) that all these things were reported to Mr. Murphy, and, if the knowledge of them was not imputable to Murphy, he had direct knowledge through the report of the case; (14) that Kates was a man of bad character.

The substance of all this, as I understand counsel to claim, is that it amounted to a conspiracy between Kates and Tully, by which they would seem to be hunting down the perpetrators of this crime, and make an apparent case against somebody, who happened to be Widmeyer, the plaintiff in this case, and, if possible, prosecute him to con-

viction, with a view of obtaining and sharing in the reward which was offered, and of both getting employment by the railroad company.

The claim is made that Kates, when he laid the case before counsel, Mr. Colston, should have stated that he (Kates) was a man of bad reputation and doubtful veracity, or at least should have disclosed or put before Mr. Colston a history of his life, from which he might have inferred this, or that counsel should have investigated Kates' character and reputation for truth and veracity before listening to, or giving any credit to, his statements. I will not spend time on this. It seems to me it is enough to state it to show how unfounded it is, and I will not stop to refer to the case to which I am cited, in which the same point came up, surprising as it may seem, and was passed upon as being unnecessary. It would practically prevent all effort to hunt down criminals, or to procure evidence against them, or the institution of prosecutions, unless the offender should happen to be caught in the very act in the presence of witnesses. As the judge in the case referred to said, when information is put before a person with a view to his acting upon it and instituting a criminal prosecution, the person to whom it is thus presented has a right to assume that it is true, unless there be something in the circumstances or something brought to his attention to cause him to suspect the honesty and the truthfulness of the informant. The law presumes that men will speak the truth; that they will act honestly and will obey the law. These are necessary presumptions. I do not think counsel was required to inquire into the character of Kates, unless there was something in the circumstances to put him on inquiry, nor do I think there was anything to put him on inquiry. If the failure of counsel to make inquiry was an omission, it was an immaterial one.

Then as to the relations between Kates and Tully: As I recall the testimony, the relations between them were fully disclosed, except as to the fact that they were to share in the reward, and that Kates had promised to help Tully get a place on the road. There was a general reward offered. Tully came to Kates. Kates was looking up the perpetrators of this crime, and Tully was willing to assist, and was in a position, as he represented, to assist. Kates was willing to make use of him, and the standing reward was known; and Kates said, "If there is a conviction, I will divide that." As to his desire to obtain employment on the road, Kates said he would do what he could to help him. I have not a very clear or distinct recollection of the testimony on that point, but I do not understand that Kates promised to get him a place, or tried to get him a place, with a view to influence him in the work that he was doing in hunting up the perpetrators of this crime; but, as I heard the testimony, Tully said to him, in substance, "Can't you get me something to do on the road?" and Kates said he did not know; he would do what he could. That is the way it impressed my mind. Now, suppose it had been known to counsel that there was a standing reward of $25, I believe it was, to any one who would furnish evidence to convict the perpetrators of these depredations upon the cars of the company, and the further fact had been put before counsel that Kates and Tully had

95 F.—59

agreed to share it, and that Kates had said, "I will assist you, if I can, in procuring employment on the road;" ought it to have made any difference in counsel's view of the case? Why, the very object of offering the reward for the detection of the crime was to stimulate somebody to go to work and hunt down the perpetrators and procure evidence against them. Unless there was something else to indicate that this man was wholly unreliable, and was willing to commit a crime himself in order to share in the $25 reward,—unless there was something in addition to that,—the bare fact that he was to have a share in the reward is not a material circumstance which ought to have affected the judgment of the defendant or his agents in passing upon the question as to whether there was sufficient cause for instituting the prosecution. I do not recall now any other facts which it is claimed were omitted. What is said about his failing to identify Widmeyer at Erlanger was before counsel. That was not an omitted fact. What is said about Baldwin and Garrity cannot come under the head of omitted facts. It was before counsel. The correspondence with Mr. Murphy was, of course, within his knowledge when the case was laid before him. All that is said of Tully as an accomplice was before Murphy, Colston, and Simmons. It cannot come under the head of omitted facts. I do not recall anything which could come under the head of omitted facts which was not fully disclosed, except what is said about the character of Kates himself, and the failure to show fully the relations between Kates and Tully. Now, if those be the only omitted facts, for the reasons which I have endeavored to state I do not think they are material. I think they are immaterial. I do not think they would have affected, or ought to have affected, the decision of counsel upon the case which was presented.

This brings me now to the case itself as presented to Mr. Murphy and to Counsel Colston, and afterwards to County Attorney Simmons. It is claimed on the part of defendant that the case so presented furnished reasonable and probable cause for instituting and carrying on the prosecution, accompanied, as it was, by the advice of counsel, and supplemented and confirmed by the action of the plaintiff in waiving an examination before the committing magistrate, and by the action of the grand jury in finding an indictment. Now, what is this doctrine of reasonable and probable cause, in the light of the authorities? This English work (Clerk & Lindsell) states it thus:

"It is sufficient if he proceed on such information as a prudent and cautious man may reasonably accept in the ordinary affairs of life, and it is for the plaintiff to satisfy the jury that there was a want of proper care in testing that information."

And in Munns v. Dupont, 3 Wash. C. C. 37, Fed. Cas. No. 9,926, afterwards quoted with approval in Ash v. Marlow, 20 Ohio, 129, it is said:

"What, then, is the meaning of the term 'probable cause'? We answer, a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged."

And the Rhode Island court (Goldstein v. Foulkes, 36 Atl. 9) says:

"In an action of malicious prosecution, probable cause does not depend on the actual state of the case, in point of fact, but upon the honest and reasonable belief of the party prosecuting it. If the prosecutor has an honest, though mistaken, belief in the truth of the charge laid in a criminal complaint, it is evidence of probable cause."

Before instituting a prosecution, a party is not bound to have evidence that will insure a conviction. He is not required to be absolutely convinced, but to have evidence sufficient to justify an honest belief of the guilt of the accused. It is only necessary that there should be such circumstances as would justify and warrant a reasonable man, a cautious man, a prudent man, in believing that the accused is guilty. It may turn out upon trial that he is not guilty, but if the accuser at the time of making the charge believes him guilty, with reasonable ground for believing it, then he is not liable in damages for having instituted the prosecution. No one would dare to set the law in motion against a person suspected of crime, if it were the law that one who is disposed to complain, either in his own interest or in the interest of public justice is compelled, before acting, to exhaust all the sources of knowledge and evidence which might afterwards be open to the officers of the law. If this were so, there would be no such thing as safety in attempting to take the initiative in instituting prosecutions for the punishment of crime. But the law requires nothing of the kind. It only requires that a man should act with reasonable prudence. Of course, the case must be such as to justify an honest belief that the crime has been committed, and that the parties suspected are guilty of it.

Now as I recall it,—and I do not undertake to recall all the circumstances that have been detailed here,—the case presented to counsel was this: Kates was in communication with Tully, who claimed to be on confidential terms with Widmeyer and his associates, and present at their conferences in which this crime was planned, and was advised by Tully that on a certain night, by a certain train, they would go to Erlanger for the purpose of robbing the cars at that point, and that he (Kates) was there that night, and saw three men make their escape from the cars. Before that, I should say, he gave Tully a note addressed to the conductor of the train, asking the conductor to closely scrutinize the men accompanying the bearer of the note, in order that he might be able afterwards to identify them, and that that note was delivered to the conductor of the train, Baldwin, and that Kates was there at the time when the men were seen escaping from the car, although he was not able himself to identify them; that he found the seals broken, and the car entered, and something taken away,—I do not remember what,—and that Baldwin, the conductor, had recognized the plaintiff, Widmeyer, as one of the men who were escaping, and would be able to identify him; and that Widmeyer was the associate of "crooks." Here was the fact that cars had been broken into and robbed; here was a man produced who could testify that he had been, accomplice as he was, in all the conferences of the robbers, and assisted in planning the robbery, and who

took part in it, and who could testify that Widmeyer, the plaintiff, was also one of the parties who took part in the robbery; and here was the testimony of the conductor, Baldwin, that he would be able to identify Widmeyer as one of the three parties who had broken into the cars and were seen escaping. Upon this statement of facts, after careful consideration of counsel, a prosecution was advised, upon condition, however, that the county attorney of Kenton county, Ky., where the prosecution must be instituted and carried on, should also be of the opinion that the prosecution could be sustained, and who, acting under the responsibility of his office, after what seems to have been a careful investigation of the story, and after inquiry made of Kates as to certain evidence which would be necessary in order to comply with the Kentucky statute, drew the affidavit for the arrest of the plaintiff. There is no question but that these facts were laid before counsel,—before Murphy, the superintendent, Colston, the counsel, and Simmons, the county attorney. It seems to me that the defendant acted with caution and prudence, and that he was warranted in accepting the advice of counsel, based upon such circumstances as these, and that the circumstances showed reasonable and probable cause for the prosecution. It certainly cannot be said that they show a want of reasonable and probable cause; and the plaintiff in this case, in order to recover, would be required, if the case were to go to the jury, to satisfy the jury by a preponderance of the evidence that there was a want of reasonable and probable cause. The jury would be compelled, after consideration of this testimony, to say that it showed a want of reasonable and probable cause to justify this prosecution, before they would be warranted in returning a verdict in favor of the plaintiff.

I will not repeat what I have said about the immateriality of alleged omitted material facts, or of the criticism of the evidence of accomplices, further than to call attention to this work of Clerk & Lindsell on Torts (pages 567, 568), where it is said:

"A man is not bound, before instituting proceedings, to see that he has such evidence as will be legally sufficient to secure a conviction. In Dawson v. Vansandau, 11 Wkly. Rep. 516, the defendant had preferred a charge of conspiracy against the plaintiff on the evidence of an alleged accomplice, and it was held that he might well have reasonable and probable cause. An accomplice or tainted witness may give evidence sufficient to make out a prima facie case and warrant the preferring of a criminal charge, though it might not be sufficient evidence upon which to convict. Neither is it necessary that the defendant should act only on legal evidence, and inquire into everything at first hand. It is sufficient if he proceed on such information as a prudent and cautious man may reasonably accept in the ordinary affairs of life, and it is for the plaintiff to satisfy the jury that there was want of proper care in testing that information."

Assuming now that the defendant was not guilty of this crime,—that the jury in the Kentucky court properly acquitted him,—yet, in my judgment, the plaintiff has not shown any want of care or prudence on the part of the defendant in testing the information on which he acted in instituting this prosecution. If there was anything in dispute here,—any question of fact in dispute,—that ought to be settled before attempting to apply the law, I would submit the question to the jury, and would not assume to determine it myself.

There is no question as to what case was presented, nor as to the circumstances under which it was presented, to counsel for the defendant, and it is simply a question of law, upon admitted and undisputed facts, as to whether these facts are sufficient to show that the defendant acted with reasonable and probable cause; and, being of the opinion that they are sufficient and do so show, the motion of defendant will be sustained, and the jury will be instructed to return a verdict in favor of the defendant.