### THE ALASKAN.

#### (Circuit Court of Appeals, Ninth Circuit. November 8, 1915.)

#### No. 2609.

MARITIME LIENS ☞65—STATUTORY LIENS FOR REPAIRS—RELIANCE ON CREDIT OF VESSEL.

> Under Rem. & Bal. Code Wash. § 1182, which gives a lien on a vessel for repairs made at the request of the owner, agent, etc., conceding that there must be some evidence that the repairs were furnished on the credit of the vessel, such evidence need be only slight; and the uncontradicted evidence of the repairer that he relied on the credit of the vessel, and that he had previously made repairs for the same owner, charged the same to the vessel direct, and rendered the bills to the owner, is sufficient.

> [Ed. Note.—For other cases, see Maritime Liens, Cent. Dig. § 103; Dec. Dig. ☞65.

> Maritime lien for supplies and services, presumption as to credit to vessel, see note to The George Dumois, 15 C. C. A. 679.]

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Suit in admiralty by Arthur F. Hutton, doing business as the Hutton Machine Works, against the Steamship Alaskan; the British Columbia Marine Railway Company, Limited, claimant. Decree for claimant, and libelant appeals. Reversed.

H. A. Martin, of Seattle, Wash., for appellant.

Ira Bronson, J. S. Robinson, and H. B. Jones, all of Seattle, Wash., for appellee.

---

Before GILBERT and ROSS, Circuit Judges, and RUDKIN, District Judge.

RUDKIN, District Judge.   Arthur F. Hutton, doing business as Hutton Machine Works, filed his libel against the steamship Alaskan, her boilers, engines, machinery, boats, apparel, and furniture, to enforce a lien for repairs furnished to the vessel between the 24th day of August, 1909, and the 29th day of September of the same year. The lien was claimed under section 1182 of Rem. & Bal. Code Wash., which provides as follows:

"All steamers, vessels and boats, their tackle, apparel and furniture, are liable ⁕ ⁕ ⁕ 2. For work done or material furnished in this state for their construction, repair or equipment at the request of their respective owners, charterers, masters, agents, consignees, contractors, subcontractors, or other persons or person having charge in whole or in part of their construction, alteration, repair or equipment; and every contractor, builder or person having charge, either in whole or in part, of the construction, alteration, repair or equipment of any steamer, vessel or boat, shall be held to be the agent of the owner for the purposes of this chapter, and for supplies furnished in this state for their use, at the request of their respective owners, charterers, masters, agents or consignees, and any person having charge, either in whole or in part, of the purchasing of supplies for the use of any such steamer, vessel or boat, shall be held to be the agent of the owner for the purposes of this chapter."

The British Columbia Marine Railway Company, Limited, intervened as claimant, and on the final hearing the libel was dismissed on the ground that it did not appear that the repairs were furnished on the credit of the vessel.   From this decree the present appeal was allowed and prosecuted.

The sole question in the case is:   Were the repairs furnished on the credit of the vessel, or was credit extended exclusively to the owner or agent?   If it appears that supplies or repairs were not furnished on the credit of the vessel, no lien attaches under the maritime law; but it is well settled that there is a presumption that supplies or repairs, ordered by the master or other ship's agent, were furnished on the credit of the vessel, unless the contrary appears.   Thus, in the case of The Emily Souder, 17 Wall. 666, 670 (21 L. Ed. 683), the court said:

"The presumption of law always is, in the absence of fraud or collusion, that where advances are made to a captain in a foreign port, upon his request, to pay for necessary repairs or supplies to enable his vessel to prosecute her voyage, or to pay harbor dues, or for pilotage, towage, and like services rendered to the vessel, that they are made upon the credit of the vessel as well as upon that of her owners.   It is not necessary to the existence of the hypothecation that there should be in terms any express pledge of the vessel, or any stipulation that the credit shall be given on her account."

No lien was given by the maritime law for supplies or repairs furnished at the home port, and for that reason statutes have been enacted in the different states giving a lien for such supplies and repairs, similar, in many respects, to the maritime lien.   It has been said on high authority that the presumption that the repairs or supplies were furnished on the credit of the vessel applies to the statutory as well as to

the maritime lien. Thus the Pennsylvania act of June 24, 1895 (P. L. 251), provides that:

"Ships and vessels of all kinds built, repaired, fitted, furnished and supplied with necessaries for navigation within this commonwealth shall be subject to a lien for all debts contracted by the builders, masters, owners, agents or consignees thereof, for work done or materials and supplies found or provided in the building, repairing, fitting, furnishing, supplying or equipping of the same in preference to any other debt due from the builders, masters, owners, agents, or consignees thereof." '

And in speaking of the lien thus given, in the case of The Vigilant, 151 Fed. 747, 753, 81 C. C. A. 371, 377, Judge Gray said: ,

"The very object of the state law is to give a lien not given by the maritime law, to wit, for supplies to a vessel at its home port, where, it may be, its owner resides, and where the conditions and necessities, in recognition of which the maritime law creates a lien upon a foreign vessel, do not exist. As we have before said, the state law, which says, in effect, that the supplies ordered by a master, owner or consignee, are presumed to be on the credit of the vessel (unless the contrary is shown), enters into the contract, which must be taken to have been made with reference to the law. The burden, therefore, of showing an express repudiation of such a pledge, known to the one who claims the lien, rests upon him who undertakes to rebut its implication."

But conceding, as we do, that there must be some evidence tending to show that the repairs were furnished on the credit of the vessel, the evidence need only be slight (The Bainbridge, 210 Fed. 622, 127 C. C. A. 258), and may be either direct or circumstantial. That the appellant furnished the repairs on the credit of the vessel in this case, and at all times intended to claim the benefit of the lien laws of the state, clearly appears from the following extract from his testimony:

"Q. Were these repairs that you made at that time necessary repairs to be made for the operation of the boat? A. Absolutely. Q. Had you done work for these people before? A. On several occasions. Q. How had you charged on other occasions? A. To the vessel direct. Q. And the bills had always been rendered to Bradford, charged to the boat direct? A. Charged to the boat, rendered to the company's office. Q. Would you have done the work that was done on this boat on anything except the credit of the vessel? A. Absolutely not."

This testimony was not contradicted. It seems equally manifest that the intention of the appellant in this regard was known to and acquiesced in by the ship's agent, at whose instance the repairs were furnished. In all their prior dealings the repairs were charged to the vessels direct, and bills thus rendered were paid without protest or objection. The same course was pursued in this case without protest or objection; and the fact that the prior repairs may have been made on other vessels is unimportant, if the parties were the same and the course of dealing the same. So far as the record discloses the Alaskan was the only asset of the Alaskan Company; credit was not extended to the agent, nor does it appear that credit was extended exclusively to the owner, with whom the appellant had no dealings. The appellant furnished the repairs in good faith in reliance upon the lien laws of the state, and all the facts and circumstances satisfy us that his course in so doing was known to the ship's agent, who fully acquiesced therein.

It follows from this that the lien claim is well founded, and the decree is accordingly reversed, with directions to enter a decree for the appellant for the balance due, with interest and costs.