**FRONTERA FRUIT CO., Inc., v. DOWLING et al.**

**No. 8260.**

Circuit Court of Appeals, Fifth Circuit.

July 13, 1937.

Rehearing Denied Aug. 13, 1937.

J. E. Meredith, Robt. T. Ervin, Jr., and C. M. A. Rogers, all of Mobile, Ala., and Louis B. Claverie and Charles Payne Fenner, Jr., both of New Orleans, La., for appellant.

Clarence J. Dowling and George Piazza, both of New Orleans, La., for appellees.

Before FOSTER, SIBLEY, and HOLMES, Circuit Judges.

HOLMES, Circuit Judge.

The original libel in this proceeding was brought in the district court by the Frontera Fruit Company against the steamship Gaston to enforce an alleged lien for money advanced for payment of seamen's wages in the amount of $2,868.87. On motion of appellee Dowling, charterer of the vessel, bond for damages for an illegal seizure was given, and thereupon said appellee filed a cross-libel claiming damages in various items aggregating $26,000. On the hearing the ship was ordered released and the claims of said appellee were denied, except for an award of $652.06 damages for detention of the vessel, and $300 for "attorney's fees." From the decree allowing

these awards, this appeal is prosecuted by the original libelant.

Since these awards are necessarily based on findings of bad faith, malice, or such negligence as would constitute bad faith, it becomes necessary to examine the facts and the legal relationship of the parties resulting therefrom, and to determine what notice thereof appellant had when the libel was filed, or to what extent it was charged with notice.

Prior to November 3, 1935, the incorporators of the Frontera Fruit Company, appellant herein, were brought in touch with one Manuel Jaidar by an officer of the Poydras Fruit Company. As a result of the negotiations between the three interests thus identified and represented, the Frontera Fruit Company was organized, and a contract executed between it and Manuel Jaidar, on the above-mentioned date, pursuant to which Jaidar purchased the steamship Gaston from the Poydras Fruit Company by act of sale dated November 6, 1935.

After reciting that appellant was desirous of engaging in the business of importing bananas from Mexico and Central America, and selling them in the United States, and that Manuel Jaidar was in a position to furnish the bananas, the contract provided that Jaidar purchase the Gaston from the Poydras Fruit Company and furnish its use to appellant for the purpose of making four trips to Mexico to transport bananas at $1,200 per trip, appellant to advance $3,000 to Jaidar for supplies and labor in Mexico and $1,000 for the expenses of loading the first cargo and to pay to Jaidar the cost price of the bananas when delivered in New Orleans, less the advances of $3,000 and $1,000 above mentioned; and appellant further agreed to pay Jaidar 45 per cent. of the profits from the sale of the bananas, profits to be determined by deducting from the sale price, the cost of the fruit, cost of sales, cost of supervision, and office expenses in Mexico not to exceed 3 cents per stem, the expenses of the vessel, and any other expenses incident to the business not including salary to the officers of the corporation.

Pursuant to this contract, a written act of sale was executed by the Poydras Fruit Company and Jaidar, for the sale of the Gaston, on credit, for $10,000, payable as evidenced by three notes in the amounts of $1,000, $3,000, and $6,000; Jaidar agreeing that 50 per cent. of his share of the profits from the sale of the bananas be withheld by appellant and paid on the notes, that the Poydras Fruit Company retain title to the ship as security for payment of the notes, and that the vessel be not alienated, deteriorated, or encumbered to the prejudice of the mortgage. Appellant joined in the act of sale to bind itself to retain and pay to the Poydras Fruit Company the 50 per cent. of the profits of Jaidar allocated to the payment of the purchase price, subject, however, to the right to retain the first $3,000 thereof to reimburse itself for a loan of $3,000 made by it to the Poydras Fruit Company to pay off an outstanding lien on the ship at the time of the sale, and secured by the pledge of the Jaidar note payable to the Poydras Fruit Company in the amount of $3,000.

When arrangements were made for the first voyage, appellee was named agent for the ship in New Orleans, and Jaidar proceeded to Mexico to handle the purchase, loading, and movement of the bananas. All of the amounts required by the contract were advanced by appellant. Jaidar did not return to the United States, but allowed the appellant to handle all of the business there for him, even to the selection of the ship's agent, master, crew, purchase of supplies, obtaining repairs, and payment of all charges against the vessel. There were delays and difficulties encountered on the first trip which increased the cost thereof to $1,100 more than the contemplated $1,200 to be paid by appellant as freight. Before the ship arrived, appellant arranged through appellee Dowling, as agent of Jaidar, to advance this sum and have the master execute a receipt therefor, reciting that the sum was advanced and used solely for the purpose of paying the wages of the ship's crew. Due to legal difficulties, the ship returned to other ports than New Orleans on the second, third, and fourth voyages, and similar arrangements were made through the ship's agents, selected by appellant; the total amount advanced being $2868.87, as above stated. In the discussions leading up to this arrangement, it appeared that appellant was chiefly concerned with the continuation of the banana business, made the advances for the purpose of continuing it, and took the receipts of the master as a subrogation of the lien of the seamen as additional security for these advances. It will be noticed that appellant had advanced $3,000 to the Poydras Fruit Com-

pany in the transaction in which Jaidar became the equitable owner of the vessel, and that it held the note of Jaidar, in this amount, as security for that advance. Presumably, appellant had the same security for this $3,000 as the Poydras Fruit Company for the balance of the purchase price of the ship.

After the fourth voyage, appellant took complete charge of the vessel and made a fifth voyage, after which the vessel was laid up and negotiations were opened for its purchase from the Poydras Fruit Company. The chief difference between the parties was whether or not the $2,868.87 advanced by appellant should be credited on the purchase price. On May 28, 1936, appellee Dowling chartered the vessel from the Poydras Fruit Company, and demanded possssion from appellant. Possession was delivered to him on June 2, 1936, and on the same day a libel was filed, in the Southern District of Mississippi, and the ship seized under the claim of appellant for its lien as subrogee to the claims of the seamen. This libel was dismissed for want of a bond for damages for the wrongful seizure of the vessel, and thereafter this proceeding was begun after the ship had proceeded to Mobile, taken fuel oil, stores, supplies, and equipment preparatory to making a voyage.

There is little or no dispute about the facts outlined above. On the trial, the court found that appellant and Jaidar were engaged in a joint venture and that appellant was not entitled to subrogation; that appellant attempted to raise the asserted liens to protect itself from loss in the venture; and that the libel was brought in bad faith, in that appellant was attempting to shift its losses to the Poydras Fruit Company.

█ From the facts stated, the conclusion that appellant and Jaidar were engaged in a joint venture is inescapable. It is equally clear that the purchase, ownership, and management of the steamship Gaston was incidental to and a part of the prosecution of the venture. It is insisted that Jaidar was a penniless Mexican. Certain it is that he could not have purchased the steamship Gaston on his credit alone in the absence of a showing that it would be engaged in a lucrative business, or that he had the financial backing of responsible parties. In fact, it affirmatively appears that he purchased the vessel only after he had bound himself to do so in the con-

tract of November 3d. His purchase of the vessel was one of the conditions to be met before he could engage in the business with appellant. Another condition was that the vessel thus purchased be chartered to appellant for four voyages. Appellant speaks of this arrangement as being a time charter. However, it must be remembered that appellant was obtaining and did obtain the use of the ship for a particular purpose, all property rights therein, except the lien of the Poydras Fruit Company, to be postponed until this purpose had been fulfilled.

Whatever Jaidar's title to the vessel may have been, it was burdened with his obligation to devote its use to the particular purpose above mentioned. In order to bring that title into being, appellant advanced $3,000. It must have contemplated that Jaidar would remain in Mexico to engage in the business of buying bananas and performing the other duties imposed upon him under the contract. Therefore, it was provided in the contract that the master and crew should be considered the agents of appellant, with the saving provision that appellant be in no way responsible for the safe transportation of the fruit or vessel except such as should occur through the fault or negligence of appellant. The contract, act of sale, and course of dealing indicate clearly that, when the venture was begun, appellant arranged for the use of this particular vessel without obligating itself to purchase the same, but taking its proprietary interest therein through Jaidar, with the full knowledge and acquiescence of the Poydras Fruit Company. In so doing, it escaped liability for the purchase price, but obtained the exclusive right to its use for four voyages.

█ The purchase of the vessel was divorced from the venture so far as payment of the price was concerned, but the title acquired was devoted to that end. While appellant obtained only a limited and conditional interest in the vessel after the completion of the specified term, for that term its right to the use, management, and control of the ship, pursuant to the contract with Jaidar, was present, absolute, and unconditional. The fact that in the contract Jaidar agreed to "furnish the use of said boat" does not change the character of the contract in view of the fact that appellant had and exercised all the rights and privileges incident to a contract of letting. Therefore, appellant was, for the term of the four voyages, in the position of the

**296**

owner pro hac vice. In the case of United States v. Shea, 152 U.S. 178, at page 189, 14 S.Ct. 519, 522, 38 L.Ed. 403, it is said:

"No technical words are necessary to create a demise. It is enough that the language used shows an intent to transfer the possession, command, and control. * * *

"The claim, when presented to the department, was rejected on the ground that the 'boat was wholly under the control of the owner and his agents and employes.' But the findings of fact show that that alleged ground is a mistake,—that it was wholly under the management and control of the quartermaster's department. Nothing more need be said. While the question is not free from doubt, yet in view of the fact that the petitioner was to provide and furnish a vessel,—that this vessel, when tendered, was accepted, and was not only in the service, but under the exclusive management and control, of the quartermaster's department at the time of the accident,—we think that it must be adjudged that the case presented is one of a contract of hiring, and not for service, and that the government, during this possession of the vessel, was a special owner, and bound to pay rent for the vessel until returned to petitioner."

See, also, The Johnson Lighterage Co. (D.C.N.J.) 240 F. 435.

Appellant, having the exclusive management and control of the vessel, bore the relationship of owner. While this relationship existed, appellant could not acquire any interest which would prejudice the mortgage lien retained by the seller. In these transactions it dealt with itself on the account of the ship, and no maritime lien could be asserted in its favor. The Catherine M. Monahan (D.C.Md.) 197 F. 855. Cf. The Gloucester (D.C.Mass.) 285 F. 579; The Fort Gaines (D.C.Md.) 24 F.(2d) 438; The Vedas (D.C.Fla.) 17 F.(2d) 121.

Under the contract, Jaidar was the general owner of the vessel. He was also the owner of the fruit in the course of transportation. He agreed to sell the fruit delivered in New Orleans at cost plus 45 per cent. of the profits from its sale, at the same time agreeing to furnish the ship for its transportation, and to receive $1,200 freight for each cargo of his own bananas. The captain and crew were the agents of appellant, and Jaidar released appellant from liability for their acts. Obviously, these provisions were agreed upon as devices by which the losses in the business would be apportioned between appellant and Jaidar, and were not intended to, and did not, affect the relationship of appellant to the vessel. Thus, the advances were not on the credit of the ship, but were advances to the venture which, by the terms of the contract, were chargeable to the profits of Jaidar. It follows that appellant could not be subrogated to the rights of the seamen. The Alaskan (C.C.A.9) 227 F. 594; The William P. Donnelly (D.C.N.Y.) 156 F. 302; The Golden Rod (C.C.A.2) 151 F. 6; The C. W. Moore (D.C.Wis.) 107 F. 957.

However clear the facts and legal consequences may appear at this time, they present intricate problems of analysis and research. In arriving at its conclusions, this court has had the advantage of a retrospective view of the facts existing when the libel was instituted. On the trial in the District Court appellant requested an adjournment to procure the attendance of Stanford Morse, an attorney at law and proctor in admiralty practicing at Gulfport, Miss., as a witness in its behalf on the issue of good faith in suing out the writ. The adjournment was denied, but, on proper proceedings, the testimony was taken in this court and is now before us in the form of depositions.

From the deposition and other evidence in the record, it appears that Morse was employed by appellant in the latter part of 1935, or early in 1936, in connection with litigation arising out of seizures, or attempted seizures, of the cargo, or cargoes, unloaded at Gulfport, and, incident to that employment, he became familiar with the contracts and agreements mentioned above, as well as with the payments made for which appellant received the receipt of the master as payment of seamen's wages. His employment continued through the time that the vessel was laid up in Gulfport, and he was consulted frequently during the negotiations with the Poydras Fruit Company looking toward the purchase of the ship. During this time he advised appellant that it was entitled to subrogation to the lien of the seamen, and, at appellant's request, prepared a libel to be filed in the event such a proceeding should be necessary to protect its supposed rights under the payments it had made. The filing of the libel at Gulfport was pursuant to his advice, and when that libel was dismissed he urgently advised the filing of

the libel in the instant case and participated in it when appellant accepted his advice and acted thereon. The direct testimony, that appellant acted in reliance on the advice and counsel of Morse, is uncontradicted except by circumstances which, standing alone, do not require a contrary conclusion. That Morse himself acted in good faith is amply shown, and is not questioned. He appears to have had all of the material facts before him at the time he reached his conclusions and gave his advice.

■ The gravamen of the right to recover damages for wrongful seizure or detention of vessels is the bad faith, malice, or gross negligence of the offending party. The Alcalde (D.C.) 132 F. 576; The Amiral Cecille (D.C.) 134 F. 673; Artinano v. Grace & Co. (D.C.) 286 F. 702. The reasons for the award of damages are analogous to those in cases of malicious prosecution. The defendant is required to respond in damages for causing to be done through the process of the court that which would have been wrongful for him to do himself, having no legal justification therefor and acting in bad faith, with malice, or through a wanton disregard of the legal rights of his adversary. The courts are institutions for the settlement of disputes both as to law and facts. Where citizens reasonably disagree concerning their rights, powers, and privileges, the doors should be kept open for an orderly determination of their differences. It has been held by this court that the advice of competent counsel, honestly sought and acted upon in good faith is alone a complete defense to an action for malicious prosecution. Cragin v. De Pape (C.C.A.) 159 F. 691. See, also, Staunton v. Goshorn (C.C.A.) 94 F. 52, and Widmeyer v. Felton (C.C.) 95 F. 926. The same principle controls the case at bar. The claim of the right to subrogation based on the advice of its attorney, erroneous though it may have been, honestly obtained and reasonably accepted, gave appellant access to the process of the court until that claim of right could be adjudicated, and no damages can be assessed against it for fairly submitting it for determination.

For the reasons stated, the decree of the District Court is reversed as to the award for damages and attorney's fees. However, it appearing that this reversal is principally upon new evidence, not made available at the trial in the District Court,

justice requires that the costs be assessed equally against appellant and appellee Dowling. Cf. The Oxford (C.C.A.5) 66 F. 590, 595. The costs of the District Court were properly assessed against appellant. The judgment of the District Court is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.