COASTAL BARGE CORPORATION,
Plaintiff,

v.

The M/V MARITIME PROSPERITY, Her
Engines, Tackles, Appurtenances, etc., in
rem, and Rosario Navigation Company,
Inc., Her Owner, in personam, Defen-
dants.

No. 93–1797–CIV–T–17B.

United States District Court,
M.D. Florida,
Tampa Division.

Oct. 27, 1994.

Brendan P. O'Sullivan, Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, FL, for plaintiff Coastal Barge Corporation.

James N. Hurley, Hayden & Milliken, P.A., Miami, FL, for defendant Rosario Navigation Company, Inc., in personam.

Hartford Fire Insurance Company, Hartford, CT, pro se.

## ORDER ON MOTIONS

KOVACHEVICH, District Judge.

This cause is before the Court on Defendant's Statement of Damages and Motion for Entry of Judgment (Dkt. 17), Plaintiff's response (Dkt. 24) and Defendant's Motion for Leave to File Reply Memorandum to Plaintiff's Response in Opposition to Claimant/Owner's Statement of Damages and Motion for Entry of Judgment (Dkt. 25).

## PROCEDURAL BACKGROUND

This admiralty action stems from separate collisions involving the same two ships on two occasions. In its Complaint to this Court, Plaintiff, Coastal Barge Corporation (Coastal), pleaded for the arrest of Defendant *M/V Maritime Prosperity*, in order to enforce Plaintiff's maritime lien for damages resulting from the collisions. Accordingly, the Court issued a Warrant of Arrest. The warrant was served upon the Defendant vessel by the United States Marshal's Service on the evening of October 25, 1993, and the ship was detained for approximately nine days at Port Manatee, Florida. The detention ended when this Court quashed the Warrant of Arrest. (Dkt. 16). Defendant's Statement of Damages and Motion for Entry of Judgment followed. The instant cause relates to the extent of Plaintiff's liability in effecting the arrest, as well as the measure of damages suffered by Defendant, Rosario Navigation Company, Inc. (Rosario), as a result of the arrest.

## STATEMENT OF THE CASE

The arrest of the *M/V Maritime Prosperity* on October 25, 1993, was actually the second time Plaintiff had arrested the vessel. The case began with a collision that occurred on October 16, 1990, involving the *Maritime Prosperity* and Plaintiff's vessel, *M/V Lash Atlantico*. The two ships collided again on October 28, 1990, at or about the same location, near Port Said, in international waters. Nearly two years later, on October 14, 1992, Rosario, as owner of the *Maritime Prosperity*, filed suit against the *Lash Atlantico* in The Republic of South Africa. Pursuant to that action in rem, the *Lash Atlantico* was arrested in South Africa on November 10, 1992. The ship was subsequently released upon the posting of security, agreed to by Rosario. Some nine months after that, on August 20, 1993, Plaintiff in this action, Coastal, arrested the *Maritime Prosperity* in South Africa, pursuant to Coastal's counterclaim in the original action.

The *Maritime Prosperity* was released from custody in South Africa under the terms of a Letter of Undertaking, furnished to Coastal by Rosario, and agreed to by both. The undertaking transferred the ship's liability to a company named The Swedish Club, as surety. The Swedish Club agreed to pay Coastal a sum not to exceed $490,226.06, upon determination by a South African court that the *Maritime Prosperity* was in fact liable to Coastal for the collisions. In return, Coastal expressly agreed not to rearrest the *Maritime Prosperity* in further pursuit of its claims for legal relief.

Subsequently, Coastal sued in this Court, filing an *in rem* action against the *Maritime Prosperity*, and an *in personam* action against Rosario. Coastal's complaint made no reference to the Letter of Undertaking, nor to any previous security. Pursuant to the Complaint, the Court issued a Warrant of Arrest for the *Maritime Prosperity*, as is customary when a maritime lien is sought to secure bona fide claims against a vessel. When the existence of the Letter of Undertaking was later revealed, the Court quashed its arrest warrant and directed Rosario to

submit a statement of damages attendant to the arrest.

### DISCUSSION

■ In the Order quashing the warrant, this Court concluded that the Letter of Undertaking clearly indemnified the *Maritime Prosperity* by shifting its liability for the collisions onto The Swedish Club. The Order noted that Plaintiff, in exchange for this assumption of liability, had agreed not to subject the *Maritime Prosperity* to any further arrest as a means of securing Plaintiff's claim of damages. Most tellingly, the Order specifically noted that Plaintiff had made no mention of the Letter of Undertaking before asking this Court to arrest the *Maritime Prosperity*. The Court deemed the undertaking to be enforceable against Plaintiff, since The Swedish Club's indemnification had provided Plaintiff with valuable consideration.

In its Response in Opposition (Dkt. 24), Coastal now explains its reasons for causing the rearrest of the *Maritime Prosperity* in violation of its covenant not to do so. Plaintiff argues that The Swedish Club's assumption of liability was prima facie ineffective because, at the moment of transfer, a "portion" of Plaintiff's *in rem* action against the *Maritime Prosperity* was time-barred by the Republic of South Africa's two-year statute of limitations. It is not clear, from Plaintiff's memorandum, just what portion of its counterclaim was barred by South African law. Equally unclear is whether Plaintiff considers the Letter of Undertaking void or voidable, or whether Plaintiff now seeks rescission of it. Plaintiff does assert that the relief ensured by the undertaking is completely unavailable, due to the statute of limitations. Thus, despite its assent to the undertaking, Coastal could not obtain any legal damages from the surety, since the condition expressed in the undertaking could never be met.

Plaintiff's agreement to the undertaking has clearly placed it at a legal disadvantage. The transfer of liability was ineffective as to Coastal's claim in South Africa because Coastal's claim was itself ineffective. In other words, Coastal could not recover on its counterclaim—with or without the undertaking. However, if one assumes that Coastal's claim had not been time-barred, *arguendo*, and that Coastal had prevailed on its *in rem* claim in South Africa, Rosario's surety would have been obliged to pay the award. In any event, whether Coastal won or lost or was time-barred, the *Maritime Prosperity* was no longer under arrest and could no longer be arrested, under the terms agreed to by Coastal.

In simple terms, Plaintiff promised to forego its rights in exchange for the possibility of payment, subject to a specific condition. Plaintiff argues that the possibility of payment was, in actual fact, no possibility. That point is well taken, for the conditional promise of payment made by Rosario, through its surety, could not be consideration for Coastal's return promise if Rosario knew, when it made the promise, that the condition could not occur. *See Restatement (Second) of Contracts,* § 76 (1981). Alternately, if Rosario honestly believed it was making a commitment, its conditional promise may be consideration even though the facts were such that no duty of performance could ever arise. *Id.,* § 76, cmt. b.

Plaintiff's argument is bolstered by the fact that, shortly after the undertaking was agreed to, Rosario raised the statute of limitations as a defense in the South African action. This tends to show that Rosario did know that the condition could not occur. What must be remembered, though, is that this contract issue has not been litigated; the critical facts remain unproven. It was incumbent upon Plaintiff to raise this issue before rearresting the *Maritime Prosperity*, so the issue could be resolved with as little damage as possible incurring by the parties, or by any third persons. That did not happen. Coastal arrested the ship, thereby injuring the ship's owner as well as its customers; only then did Plaintiff inform the Court of these precedent contractual matters.

■ Coastal's dilemma lies in the fact that a claimant's ability to arrest and detain a defendant vessel constitutes the only effective means of pursuing a maritime action *in rem. See generally Belcher Co. of Alabama,*

*Inc. v. M/V Maratha Mariner,* 724 F.2d 1161 (5th Cir.1984). That is why Coastal rearrested the *Maritime Prosperity* in this subsequent *in rem* action, despite its prior covenant. In claiming that its second arrest was in no way wrongful, Coastal now asks the Court, in essence, to validate the arrest, *ex post facto.* Whether the Court does so or not, Coastal remains saddled with its basic dilemma, i.e., the lack of *in rem* security through custody, because the *Maritime Prosperity* has long since gone on its way. At this point, then, any validation of Coastal's right to security in the *Maritime Prosperity* would necessarily restore its right to arrest the vessel again, for a third time. The Court will not brook a third detention of this vessel.

Raising this issue at this stage of the proceedings is grossly dilatory. Metaphorically speaking, Coastal wants this Court to put the toothpaste back into the tube. Rosario has moved for leave to reply to Plaintiff's memorandum. Rosario's reply will not be necessary, however, for equity demands that any further discussion of this matter be foreclosed. Clearly, Plaintiff's failure to raise the issue before the second arrest has undermined its already disadvantaged position. Coastal could have bettered its position by seeking a declaratory judgment as to its right to rearrest the ship in this jurisdiction. Plaintiff has cited cases which tend to support such a judgment, and certain facts also support it. Absent any pre-trial disposition, Plaintiff should have included the issue within its Complaint. Had Plaintiff done so, the Court might have preliminarily enjoined the ship's departure while the issue was decided. In such a scenario, Coastal could have bonded the defendant vessel for losses incurred, should the injunction have ultimately been deemed improper.

■■■ In any event, Plaintiff did not pursue these avenues. Instead, Coastal treated the undertaking as void when it asked this Court to arrest the *Maritime Prosperity* without notifying the Court of its existence. Plaintiff has not suggested that it made its promise not to rearrest the *Maritime Prosperity* due to fraud, duress, or misrepresentation on the part of Rosario. As such, Coastal's dilemma appears to stem from its sole mistake regarding a basic assumption on which the undertaking was made, i.e., the timeliness of its South African counterclaim. Where a party makes such a fundamental mistake in forming a contract, the mistaken party may nevertheless be held to its covenant if, under the circumstances, the risk should reasonably lie with that party. *Restatement (Second) of Contracts,* §§ 153, 154 (1981).

The Court concludes that Coastal's failure to raise these contract issues in a timely manner makes it reasonable to assign to Coastal the risk of its own error. If the contract was indeed voidable by Plaintiff at some point in this proceeding, it is not so now. Due to its silence in pursuing the arrest warrant, Coastal is hereby equitably estopped from raising any legal defenses to the Order quashing the arrest warrant. Plaintiff shall be held to its covenant. The issue now under consideration is whether and to what extent Coastal is liable for its second detention of the defendant ship.

### *LIABILITY FOR WRONGFUL ARREST OF A VESSEL*

■■■ To maintain an action for wrongful arrest of a maritime vessel, the detainee must show that the arrest was not merely due to negligence, but that the action arose from malice, bad faith, or reckless disregard of the other party's legal rights. *Frontera Fruit Co. v. Dowling,* 91 F.2d 293, 297 (5th Cir.1937); *Furness Withy (Chartering), Inc. v. World Energy Systems Associates, Inc.,* 854 F.2d 410, 411–12 (11th Cir.1988). In their Motion for Leave to Reply, Defendants contend that the Order quashing the arrest warrant implicitly concluded that bad faith had in fact animated Plaintiff's plea for arrest, since that Order directed Defendants to submit a valuation of damages caused by Plaintiff's second arrest of the *Maritime Prosperity.*

Coastal rearrested the *Maritime Prosperity* to enforce a maritime lien; as such, Plaintiff's motivation was driven by its conviction that its promise not to rearrest the ship had been given for illusory consideration. To be fully convinced of the correctness of one's selected course of action does not mean, how-

ever, that reckless disregard is absent. Indeed, such righteous purposes may well be a prime ingredient for reckless disregard. Coastal knew full well of the ship's right not to be rearrested by it. That awareness did not deter Coastal from rearresting the ship.

As stated previously, Coastal could have followed certain procedures to ensure both Rosario's rights and the legitimacy of any rearrest. It elected not to pursue such a course. Plaintiff's counsel attests that it advised Coastal to follow the course actually pursued; counsel further avers that Plaintiff acted in good faith on that advice. In its defense, Plaintiff cites *Frontera Fruit Co.* for the proposition that "the advice of competent counsel, honestly sought and acted upon in good faith is alone a complete defense to an action for malicious prosecution." 91 F.2d at 297. However, the requirement that a claimant act on counsel's advice "in good faith," merely begs the question. Did Plaintiff, indeed, act on the advice in good faith?

The reasons for awarding damages for wrongful arrest of a vessel are analogous to those in cases of malicious prosecution. *Frontera Fruit Co.*, 91 F.2d at 297. In cases of malicious prosecution, a defendant may disregard the claimant's rights by recklessly disregarding the truth. *Kelly v. Curtis*, 21 F.3d 1544, 1554 (11th Cir.1994). The omission of a known, pertinent fact may constitute reckless disregard of the truth. *Id.* at 1553. An omission that is merely negligent does not rise to the level of intent required to prove malicious prosecution. *Id.* Within such cases, persons who supply information to the police and thereby instigate prosecutions "have a duty to make a full and fair disclosure of all evidence to the police, and a failure to make material exculpatory information known to the police could be evidence of a hostile motive." *Griffiths v. CIGNA Corporation*, 988 F.2d 457, 463 (3d Cir.1993) (quoting *Diamond Shamrock v. Ortiz*, 753 S.W.2d 238, 241 (Tex.App.Ct.1988)).

The quoted passage is analogous to the instant cause, especially if one substitutes the word "court" for "police." Coastal possessed knowledge which may well have precluded the arrest of the *Maritime Prosperity*, were it supplied to the Court. Coastal consciously withheld that information, and the Court ordered the arrest of the ship. Once the Court obtained the information, it quashed the arrest warrant. Whether or not Plaintiff followed the advice of its attorneys, its omission exhibited a reckless disregard for the truth, and that omission cannot be considered negligent. Coastal may have a good faith basis for believing that the consideration given in exchange for its promise was illusory. However, that cannot translate into a good faith basis for causing the rearrest of the *Maritime Prosperity* by the omission of a pertinent fact. Therefore, the Court finds that Plaintiff's actions in effecting the arrest of the ship resulted from bad faith.

By its conduct, Plaintiff has injured the Defendants and their innocent customers. By keeping silent as to the existence of its prior promise, Plaintiff made this Court an instrument of that injury. Damages for wrongful arrest of the *Maritime Prosperity* will obtain accordingly.

### DAMAGES FOR WRONGFUL ARREST

■ Plaintiff asserts that it can be liable only to Defendants, and not for the losses sustained by Defendants' customers as a result of the ship's nine-day detention at Port Manatee. But, Coastal can avoid this derivative liability only if its conduct was the product of negligence, and not bad faith. *See Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 48 S.Ct 134, 72 L.Ed. 290 (1927). Since the conduct was not negligent, Plaintiff is liable to Rosario's customer, Eastern Cement, and to Rosario's agent, Transocean Grabbulk. For similar reasons, Plaintiff is also liable for Rosario's attorney fees and expenses. *See Kanematsu–Gosho v. Messiniaki Aigli*, 814 F.2d 115 (2d Cir.1987).

■ As for Defendants' enumerated damages, Plaintiff does raise a valid objection to Rosario's off-hire claim. While the total duration of the ship's detention lasted eight days, twenty-two hours and twelve minutes, the *Maritime Prosperity* experienced mechanical problems for a period of three days, four hours and forty-two minutes. During this period, the ship was unable to depart from Port Manatee, notwithstanding the de-

tention. Accordingly, the duration of *Maritime Prosperity*'s off-hire claim is reduced to five days, seventeen hours and thirty minutes. Thus, the valuation of the off-hire claim shall be reduced, from the $84,707.53, claimed by Rosario, to $51,705.72.

In addition, Rosario has not supplied sufficient evidence for its dockage claim of $9,838.00. Documentary evidence shows that all pertinent dockage fees attendant to the detention were billed to the court-appointed custodian of the *Maritime Prosperity,* Argus Worldwide, Inc. (Dkt. 24, Exhibit C). This item shall be excised from the list of damages. Defendants' damages for Plaintiff's wrongful arrest of the *M/V Maritime Prosperity* total $130,654.54, and are itemized as follows:

| | | |
|---|---|---:|
| Claim of Eastern Cement | — | $ 59,770.28 |
| Attorney Fees and expenses | — | 15,508.12 |
| Off-hire claim | — | 51,705.72 |
| Claim of Transocean Grabbulk | — | 3,670.42 |
| Total Damages: | | $130,654.54 |

In this proceeding, Defendants had full opportunity to present their case for damages, and Plaintiff had full opportunity to respond. There is no reason to hear further argument as to the valuation of damages. Accordingly, it is

ORDERED that Defendants' Motion for Leave to File Reply Memorandum to Plaintiff's Response in Opposition (Dkt. 25) is **denied,** the Court having rejected Plaintiff's arguments regarding the characterization of the arrest and Plaintiff's liability for damages resulting from the arrest. It is further

ORDERED that Defendants' Statement of Damages (Dkt. 17) is **modified** to reflect a total damage recovery of $130,654.54; that the item listed as "Dockage claim" is hereby deleted; and that the item listed as "Off-hire claim" is hereby reduced in value to $51,-705.72. It is further

ORDERED that Defendants' Motion for Entry of Judgment (Dkt. 17) is hereby **granted,** subject to the modification of damages noted above. The Clerk of Court shall enter judgment in favor of Defendants, accordingly.

DONE and ORDERED.