**·INCAS AND MONTEREY PRINTING AND PACKAGING, LTD.,**
Plaintiffs-Appellants,

v.

**M/V SANG JIN, her engines, tackle, apparel, etc., in rem, Joong Ang Shipping Co., Van Weelde Brothers Shipping Ltd. and Grundvig Chartering, Inc., Defendants-Appellees.**

**In re INCAS AND MONTEREY PRINTING AND PACKAGING LTD., Petitioners.**

Nos. 83–2571, 83–2627.

United States Court of Appeals, Fifth Circuit.

Dec. 3, 1984.

Rehearings and Rehearings En Banc Denied Jan. 4, 1985.

Vinson & Elkins, Harold K. Watson, Henry S. Morgan, Jr., Houston, Tex., Johnston, Adams, May, Howard & Hill, Alex T.

Howard, Jr., Thomas S. Rue, Mobile, Ala., for plaintiffs-appellants.

Royston, Rayzor, Vickery & Williams, Bradley A. Jackson, Houston, Tex., for—M/V Sang Jin.

Clann & Pearson, Kathy A. Morrow, Edward J. Murphy, Houston, Tex., Clarkson S. Fisher, Jr., George J. Koelzer, Red Bank, N.J., for—Van Weelde.

Bradley A. Jackson, Howard R. King, Edward J. Murphy, Kathy A. Morrow, Houston, Tex., George J. Koelzer, Red Bank, N.J., Hon. Ross N. Sterling, U.S. District Judge, Houston, Tex., Clarkson S. Fisher, Jr., Red Bank, N.J., for Joong Ang Shipping et al.

Before BROWN, GEE, and WILLIAMS, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

This is an appeal from an order of the district court in an admiralty case requiring plaintiffs to post counter-security under Supplemental Admiralty Rule E(7), on pain of loss of its security for its original claim, which would likely destroy the *in rem* jurisdiction of the district court. We review the claims, vacate the district court order, and remand.

### In the Beginning

The controversy[1] spawning this legal action began in 1982, when plaintiffs arranged for the carriage of two consignments of paper aboard the M/V SANG JIN.[2] Although the vessel was to proceed to East Africa, it instead made an unexpected stop in Pensacola, Florida, where plaintiffs' cargo was discharged. Plaintiffs demanded possession of their cargo from defendants, Van Weelde Bros., the time charterers, and Joong Ang Shipping, the owners of the vessel. Defendants, however, refused delivery, claiming a lien on the cargo for the expense of discharging it in Florida.[3]

Plaintiffs, seeking recovery of their cargo and damages for breach of contract of carriage, filed a complaint and had the M/V SANG JIN judicially arrested in Galveston on September 3, 1982 pursuant to Supplemental Admiralty Rule C.[4] One week later, the district court entered an order requiring that security of $1,600,000 be posted for release of the vessel, and that plaintiffs post security of $125,000 for release of their cargo, in light of defendants' lien for discharge expenses.

On September 17, 1982, defendant Van Weelde filed its answer to plaintiffs' complaint, including counterclaims seeking $2,960,000 in damages. Van Weelde, the time charterer, alleged that plaintiffs had wrongfully seized the M/V SANG JIN with resultant commercial losses, including loss to its business reputation.[5] On the same day, Van Weelde moved that plaintiffs be required to post counter-security for these counterclaims, as provided for in Supplemental Admiralty Rule E(7).[6]

---

1. We recite the facts as alleged in plaintiffs' complaint.

2. One consignment was taken on board in Savannah, Georgia, and the other in St. John, New Brunswick.

3. Although the vessel sailed without issuing bills of lading, a third defendant, Grundvig Chartering, Inc., subsequently issued bills of lading as subcharterer. Defendant Van Weelde alleges that these bills of lading were fraudulently issued. Grundvig Chartering, named as a defendant in plaintiffs' complaint, has yet to appear in this action.

4. In its complaint, Incas invoked F.R.Civ.P. 9(h) to obtain the benefit of the Supplemental Rules for Admiralty.

5. Defendant Joong Ang, who filed a Claim as Owner of the M/V SANG JIN, has made no counterclaims.

6. Supplemental Admiralty Rule E(7) provides as follows:

> (7) Security on counterclaim. Whenever there is asserted a counterclaim arising out of the same transaction or occurrence with respect to which the action was originally filed, and the defendant or claimant in the original

On September 24, 1982, the parties reached an agreement whereby plaintiffs' cargo in Pensacola would be released without the posting of the $125,000 security required by the court's order, on condition that plaintiffs agree to accept security for the vessel for $125,000 less than the $1,600,000 previously ordered by the court, and with plaintiffs' agreement not to use the release of the cargo as an additional defense to Van Weelde's lien against the cargo. On the same day, the court ordered that, defendants having posted security of $1,475,000 in the form of $375,000 deposited in the court registry and a letter of undertaking from the vessel owner's Protection and Indemnity Club in the amount of $1,100,000, plaintiffs would be required to post equivalent counter-security for defendants' counterclaims.

Plaintiffs having failed to post counter-security, defendants moved on October 4, 1982 that the court impose sanctions in the form of a release of the security posted by the vessel interests. Plaintiffs responded by requesting the court to reconsider its order requiring counter-security, a request which was denied by the court on March 16, 1983.[7]

On September 13, 1983,[8] the district court repeated its order of September 24, 1982 that plaintiffs post counter-security in the amount of $1,475,000. The court also ordered that the security posted by the vessel interests be released if counter-security was not posted within 10 days. On September 20, 1983, plaintiffs filed notice of appeal of the September 13, 1983 order. On September 22, 1983, this court granted a stay of the district court's order, pending "further orders of the court." Plaintiffs thereafter sought alternate relief from the district court's order in the form of a petition for writ of mandamus. Ultimately, this court ordered the petition for writ of mandamus carried with the case pending determination of the appealability of the district court order of September 13, 1983.

### Appealability

Defendants first challenge the appealability of the September 13, 1983 order as lacking finality under 28 U.S.C. § 1291 (1982). That order required plaintiffs to furnish security for defendants' counterclaims within 10 days, or else suffer the sanction of the release of defendants' security for plaintiffs' claims.[9] We find the court's order final, and hence appealable under § 1291; we further find that, even if not final, the order is nevertheless appealable under the *Cohen* doctrine.

Plaintiffs have invoked the trial court's *in rem* jurisdiction by seizure of defendants' vessel. Upon release of the vessel in exchange for the security posted by the vessel interests, plaintiffs' *in rem* lien was transferred from the vessel to the fund representing the security. G. Gilmore and C. Black, *The Law of Admiralty*, § 9–89

action has given security to respond in damages, any plaintiff for whose benefit such security has been given shall give security in the usual amount and form to respond in damages to the claims set forth in such counterclaim, unless the court, for cause shown, shall otherwise direct; and proceedings on the original claim shall be stayed until such security is given, unless the court otherwise directs. . . .

Thus, a counterclaim arising "out of the same transaction or occurrence" as the original claim is a prerequisite to the posting of counter-security under Rule E(7).

7. Plaintiffs moved the court to amend its denial of reconsideration to permit an interlocutory appeal pursuant to 28 U.S.C. § 1292(b). On September 13, 1983, the court denied plaintiffs' motion to so certify the order.

8. The parties were not idle in the intervening months. During this time period, the court considered numerous discovery motions, as well as repeated motions by defendants to require plaintiffs to post security.

9. The pertinent part of the court's order is as follows:

It is, therefore,
ORDERED that plaintiffs will post security into the registry of the court in conformity with the court's September 24, 1982, order within 10 days of the date of this Order. It is further ORDERED that upon plaintiffs failure to comply with the terms of this Order, Defendants motion for sanctions is GRANTED and the order of the court requiring defendants to post security is VACATED.

(2d ed.1975). Thus, cancellation of the security would in effect put an end to plaintiffs' complaint *in rem*, destroying the jurisdiction of the court and thus rendering moot any appeal therefrom. *Seaboard and Caribbean Transport Corp. v. Hafen-Dampfschiffahrt A.G.,* 329 F.2d 538, 1964 A.M.C. 2109 (5th Cir.1964). *See also L.B. Harvey Marine, Inc. v. M/V "RIVER ARC,"* 712 F.2d 458, 459, 1984 A.M.C. 1588 (11th. Cir.1983) (in maritime action, where *res* is no longer before the court, *in rem* jurisdiction destroyed); *Taylor v. Tracor Marine, Inc.,* 683 F.2d 1361, 1362, 1983 A.M.C. 2968 (11th Cir.1982) (same holding), *cert. denied,* 460 U.S. 1012, 103 S.Ct. 1252, 75 L.Ed.2d 481 (1983).[10]

In *Seaboard,* we held that a decree in an *in rem* admiralty action releasing the bond put an end to the libel, and hence was a final decision and immediately appealable. 329 F.2d at 540, 1964 A.M.C. at 2112. Similarly, in *U.S. v. Vertol H21C, Registration No. N8540,* 545 F.2d 648 (9th Cir.1976), an order releasing the certificate of deposit securing an *in rem* action against a helicopter was held appealable under 28 U.S.C. § 1291, primarily because "release of the helicopter (and the substituted security) ended the *in rem* action." *Id.* at 650. Thus, where a court order vacates the attachment securing an *in rem* action, the order is final for purposes of § 1291.

Defendants further contend, however, that the order is not final because it merely reflected the court's *intention* to enter sanctions if plaintiffs failed to post counter-security. It is true that the security posted by defendants has not yet been released due to an order of this court staying release of the security. But even if *in rem* jurisdiction has not yet been destroyed, the district court's order is still appealable under the doctrine of *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

*Cohen* created a narrow exception to the final judgment rule, permitting appeals of orders which finally determine rights separable from the merits of the action, and which are too important to be denied review. *Id.* at 546, 69 S.Ct. at 1225–26, 93 L.Ed. at 1536. In order to be appealable under the *Cohen* doctrine, an order must (1) conclusively determine the disputed question; (2) resolve an important issue completely separate from the merits of the action; and (3) be effectively unreviewable on appeal from a final judgment. *Coopers and Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351, 357–58 (1978) (footnote omitted); *Oasis Oil and Refining Corp. v. Armada Transport and Refining,* 719 F.2d 124, 126 (5th Cir.1983).

We believe such compelling considerations are shown by the record in the case before us. The Supreme Court has recognized that an order vacating an attachment has *Cohen*-type finality. *Swift & Company Packers v. Compania Colombiana del Caribe,* 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206 (1950). As the court there recognized, appellate review at a later date of an order releasing security "would be an empty rite after the vessel had been released and the restoration of the attachment only theoretically possible." 339 U.S. at 689, 70 S.Ct. at 865, 94 L.Ed. at 1210.

As previously discussed, entry of the order releasing the security for plaintiffs' claim would destroy the trial court's *in rem* jurisdiction. And even though that security has not yet in fact been released, we must remember that there is some flexibility built into the final judgment rule, and that practical, not technical considerations are to govern the principles of finality. *Cohen,* 337 U.S. at 546, 69 S.Ct. at 1226, 93 L.Ed. at 1536; *Oswalt v. Scripto,* 616 F.2d 191, 194 (5th Cir.1980). For all practical purposes, the only remaining step necessary to end the present action is for the court formally to order the actual release of the security posted by the vessel inter-

---

**10.** For a full discussion of the effect of the substitution of security for a vessel's release, *see* the opinion of Woolsey, J., in *J.K. Welding Co. v.* *Gotham Marine Corp.,* 47 F.2d 332, 1931 A.M.C. 407 (S.D.N.Y.1931).

ests, as it has specifically said it would do if counter-security is not posted.[11] We can imagine no more perfect example of an over-technical application of the final judgment rule than to dismiss plaintiffs' appeal merely for want of one more order affecting the release of the security posted by defendants.[12]

We therefore find the order in question appealable under 28 U.S.C. § 1291.[13] Given the nature of the court's order, and its practical effect on plaintiffs' claim, we believe that appellate review at this point is not only appropriate, but is necessary if the order is to be reviewable at all.[14]

### Finally, the Merits

■ This brings us to plaintiffs' contention that Van Weelde's counterclaims are not the type for which counter-security may be required under Admiralty Rule E(7).[15]

■ Defendant Van Weelde's counterclaim asserts that plaintiffs (1) wrongfully seized the SANG JIN, (2) requested grossly excessive security, resulting in (3) interference with Van Weelde's contractual obligations, and (4) disparagement of Van Weelde's name in the business community.[16] The cornerstone of these allegations

---

**11.** Defendants cite our decision in *Constructora Subacuatica Diavaz, S.A. v. M/V HIRYU*, 718 F.2d 690 (5th Cir.1983) for the proposition that an order prospectively vacating a writ of attachment is not final within the meaning of § 1291. In that case, however, the court observed that bond for the release of the arrested vessel had yet to be fixed, nor did the record afford any basis for determining whether, when the bond was eventually fixed, it would be impossible as a practical matter for those required to post security to produce it. In the instant case, however, counter-security has already been required in the amount of $1,475,000. Moreover, unlike the situation in *Constructora*, libellants here have made an attempt to post counter-security, and have at least indicated a prospective inability to meet the court's demand. Thus, we believe this case is drawn closer to *Swift & Co.*, than to *Constructora*.

**12.** We are, of course, cognizant of our duty to strictly construe the collateral order doctrine. *See, e.g. Anchor Hocking v. Willamette Indus., Inc.*, 694 F.2d 1041 (5th Cir.1983); *In re Corrugated Container Antitrust Litigation*, 614 F.2d 958 (5th Cir.1980), *cert. denied sub nom, Mead Corp. v. Adams Extract Co.*, 449 U.S. 888, 101 S.Ct. 244, 66 L.Ed.2d 114 (1980); *North American Acceptance Corp. v. Arnall, Golden and Gregory*, 593 F.2d 642 (5th Cir.1979), *cert. denied sub nom, Arnall, Golden and Gregory v. Smith, Cohen, et al.*, 444 U.S. 956, 100 S.Ct. 436, 62 L.Ed.2d 328 (1979).

**13.** Our decision that the order is appealable under this section renders unnecessary any determination whether, as plaintiffs assert, it is appealable under 28 U.S.C. § 1292(a)(3), providing for appeal of certain orders in admiralty cases. We also need not consider plaintiffs' petition for writ of mandamus to decide this question.

**14.** In *Firestone Tire and Rubber Co. v. Risjord*, 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571

(1981), the Supreme Court stressed that even if an order meets all the other criteria for the *Cohen* doctrine, it is not appealable under § 1291 unless it would "be effectively unreviewable on appeal from a final judgment." *Id.* at 376, 101 S.Ct. at 674, 66 L.Ed.2d at 580.

**15.** Defendants also argue that even if the September 13, 1983 order is appealable, our review may only encompass the district court's decision to release defendants' security, and that we cannot address the propriety of the court's decision to order counter-security in the first place. They maintain that since counter-security was first required by the order of September 24, 1982, any appeal of that decision is time-barred. *See* F.R.App.P. 4(a)(1). This argument ignores the fact that the very order from which plaintiffs' appeal expressly repeats the directive that plaintiffs post counter-security for defendants' counterclaim. *See, supra* note 9. The requirement that plaintiffs post counter-security being part of the September 13, 1983 order, it is properly before us for review. 28 U.S.C. § 2106.

Nor is the fact that plaintiffs' Notice of Appeal refers only to the sanctions section of the September 13 order fatal to our jurisdiction. The requirement of F.R.App.P. 3(c) that a notice of appeal designate the judgment from which it is taken is not to be so strictly construed as to defeat an appeal where appellant's overriding intent to appeal is clear. *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *see Comfort Trane Air Conditioning v. Trane Company*, 592 F.2d 1373, 1390 at n. 15 (5th Cir. 1979); *U.S. v. Stromberg*, 227 F.2d 903, 904 (5th Cir.1955).

**16.** The pertinent portions of defendants' counterclaim are as follows:

### COUNT XXI

For further cause defendant, Van Weelde Bros. Shipping, Ltd., would show that Plaintiffs lack any standing to assert an *in rem* claim against the vessel. No rights or title to

is that plaintiffs had no right to employ the admiralty rules to arrest the SANG JIN in the first place. Since the admiralty is not concerned with common law labels as to theories of recovery, or causes of action, *see Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550, 1957 A.M.C. 597 (1959), we are entitled to treat this broadly as a claim for wrongful seizure, whether denominated as such or as one for abuse of process, malicious prosecution, or all three.

In *Frontera Fruit Co. v. Dowling,* 91 F.2d 293, 1937 A.M.C. 1259 (5th Cir.1937), we held that the right to recover damages for wrongful seizure of a vessel is based on a showing of bad faith, malice or gross negligence on the part of the libellant. *Id.* at 297, 1937 A.M.C. at 1266. Since that time, we have had occasion to decide, on the basis of *Frontera,* whether such bad faith existed as to warrant the award of damages for a wrongful seizure in admiralty. *See e.g., Cardinal Shipping Corp. v. M/S SEISHO MARU,* 744 F.2d 461 (5th Cir.1984); *TTT Stevedores of Texas, Inc. v. M/V JAGAT VIJETA,* 696 F.2d 1135 (5th Cir.1983); *Tampa Ship Repair & Dry Dock Co. v. Esso Export Corp.,* 237 F.2d 506, 1956 A.M.C. 217 (5th Cir.1956). In none of these cases, however, were we required to decide the precise issue presented to us on this appeal: whether a counterclaim for wrongful seizure is an appropriate basis for requiring counter-security to be posted under Admiralty Rule E(7), or its predecessor, former Admiralty Rule 50.[17] Upon examination of the intent of the Rule, we are of the opinion that counter-security should not be ordered for such a claim.

■ Under the terms of Rule E(7), counter-security may be required when a counterclaim is asserted which arises "out of the same transaction or occurrence" as the original libel. This language is identical to that defining compulsory counterclaims under F.R.Civ.P. 13(a). Thus, as Professor Moore has suggested, we can draw guidance on the proper scope of Rule E(7) by examining the test for counterclaims under F.R.Civ.P. 13(a). 7A J. Moore & A. Pelaez, *Moore's Federal Practice,* E–727 (2d ed. 1983).

■ Under the broad test for Rule 13(a) adopted by this Circuit, a counterclaim is compulsory when there is any "logical relationship" between the claim and the counterclaim. *Plant v. Blazer Financial Services,* 598 F.2d 1357 (5th Cir.1979). *See also* 6 C. Wright & A. Miller, *Federal Practice & Procedure* § 1410 (1971) (indicating breadth of this test). However, even under this liberal standard, it is clear that an action in the nature of wrongful seizure or malicious prosecution does not lie as a compulsory counterclaim under

---

goods have accrued to Plaintiff since the bills of lading were fraudulently issued. Moreover, Plaintiffs derive their contract of carriage, if any exists, by virtue of unauthorized acts of a third party not through any actions of the owner of the vessel or his employees. The bills of lading in question bear neither the signature of the Master nor anyone authorized by him. Thus, Plaintiffs may have a claim against the wrongdoing party who issued the fraudulent bills but does not have a cause of action against those who neither knew of the fraud nor participated in it, neither have they any *in rem* action against the property of such innocent parties. Accordingly, Plaintiffs are liable for the wrongful seizure of the M/V SANG JIN and all damages arising or a result of Plaintiffs' wrongful seizure....

### COUNT XXIII

For further cause Defendant, Van Weelde Bros. Shipping, Ltd., would show that the plaintiffs' grossly excessive and improper demand for security has subjected Defendant, to unnecessary and unwarranted expenses. Accordingly, plaintiffs are liable for all of Defendant's damages resulting from plaintiffs' grossly excessive and improper demand for security....

17. Admiralty Rule 50:

Whenever a cross-libel is filed upon any counterclaim arising out of the same contract or cause of action for which the original libel suit was filed, and the respondent or claimant in the original suit shall have given security to respond in damages, the respondent in the cross-libel shall give security in the usual amount and form to respond in damages to the claims set forth in said cross-libel, unless the court, for cause shown, shall otherwise direct; and all proceedings on the original libel shall be stayed until such security be given, unless the court otherwise directs.

F.R.Civ.P. 13(a). *See, e.g., Olsen v. Puntervold,* 338 F.2d 21 (5th Cir.1964) (malicious prosecution); *U.S. General, Inc. v. City of Joliet,* 598 F.2d 1050 (7th Cir.1979) (malicious prosecution). *See generally* 3 J. Moore, *Moore's Federal Practice* ¶ 13.13, 13–78, n. 26 (2d ed.1984).

Such a counterclaim not "arising out of the same transaction or occurrence" as the original action for purposes of federal practice, and there being neither history nor practice in the admiralty suggesting any difference, we see no justification for applying Rule E(7) to a broader class of counterclaims than that permitted under F.R. Civ.P. 13(a).[18] This is especially appropriate in light of the 1966 Unification of Admiralty and Civil Practice. We therefore conclude that, whether or not an action for wrongful seizure, abuse of process or malicious prosecution may be asserted as a counterclaim in admiralty practice, counter-security under Rule E(7) may not be required for such a claim.

This holding is supported by the decisions of the federal courts which have considered this precise question. In *Amerada Hess Corp. v. S.S. ATHENA,* 1984 A.M.C. 130 (D.Md.1984), the court denied defendant's request for counter-security based on counterclaims alleging abuse of process and wrongful use of civil proceedings. In denying counter-security, the court reasoned that, since such a counterclaim would not be permitted under F.R.Civ.P.

13(a), it could not be the basis for requiring counter-security under Admiralty Rule E(7). *Id.* at 132.

A similar conclusion was made under former Admiralty Rule 50 in *Solomon v. Bruchhausen,* 305 F.2d 941, 1963 A.M.C. 210 (2d Cir.1962), *cert. denied sub nom Isbrandtsen v. Maximo,* 371 U.S. 951, 83 S.Ct. 506, 9 L.Ed.2d 499, 1963 A.M.C. 1646 (1963). There, the district court had ordered libellants to post counter-security for respondent's cross-claim of abuse of process in the arrest of respondent's vessels. The Second Circuit dismissed the cross-claim stating that an action for abuse of process could not be considered to have arisen out of the original action.[19]

We thus decide that the district court improperly ordered the posting of security for defendants' counterclaims. Having found appellate jurisdiction to decide this issue, plaintiffs' petition for Writ of Mandamus in No. 83–2627 is mooted, and is therefore dismissed.

For the foregoing reasons, the district court's order requiring appellant to post counter-security is vacated, and the cause remanded for further proceedings.

VACATED and REMANDED.

---

18. As the Supreme Court has stated,

> Traditionally, admiralty has narrowly circumscribed the filing of unrelated cross-libels and defenses.... [V]arious reasons have been offered for refusal to entertain unrelated defenses: protection of the seaman's wage claims; preservation of relatively simple proceedings not affecting third-party rights; and the recognition that allowing cross-libels might deprive litigants of jury trials to which they would otherwise be entitled if the cross-libel were pressed in an independent proceeding.

*United States v. Isthmanian SS Co.,* 359 U.S. 314, 320, 79 S.Ct. 857, 860–61, 3 L.Ed.2d 845, 849–50, 1959 A.M.C. 1332, 1337 (1959). Given this traditional narrow construction, the court concluded:

> The law on this point in admiralty has been settled beyond doubt in the lower courts for

many years and an Admiralty Rule of this Court recognizes this case law. We think that if the law is to change it should be by rule-making or legislation and not by decision. *Id.* at 323, 79 S.Ct. at 862, 3 L.Ed.2d at 851.

19. While the *Solomon* court held that a claim of wrongful seizure would not lie at *all* as a cross-claim in admiralty, 305 F.2d at 943, we do not decide that question. We merely hold that counter-security may not be required under Rule E(7) for such a claim. We observe, however, that other courts have reached the same conclusion as the court in *Solomon. See, Maritime Terminals v. M/S JAN,* 1978 A.M.C. 1236 (N.D.Ill.1978) (claim of wrongful arrest does not lie as cross-claim in admiralty); *United States v. M/V PITCAIRN,* 272 F.Supp. 518 (E.D.La.1967) (wrongful seizure claim does not arise out of the same cause of action as the original libel).