PHOENIX BULK CARRIERS,
LTD., Plaintiff,

v.

AMERICA METALS TRADING,
LLP, Defendant.

No. 10 Civ. 2963(NRB).

United States District Court,
S.D. New York.

Oct. 5, 2010.

Peter J. Gutowski, Edward J. Carlson, Freehill, Hogan & Mahar, LLP, New York, NY, for Plaintiff.

Patrick F. Lennon, Esq., Lennon, Murphy & Lennon, LLC, New York, NY, for Defendant.

## MEMORANDUM AND ORDER

NAOMI REICE BUCHWALD, District Judge.

On April 12, 2010, plaintiff Phoenix Bulk Carriers, Ltd. ("plaintiff") was granted an order of attachment in the amount of $830,142.45, pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims ("Supplemental Rules"). Subsequently, defendant America Metals Trading LLP ("defendant") posted security in the above-mentioned amount. Defendant now moves pursuant to Supplemental Rule E(7) for countersecurity in the amount of $833,039.64.

For the reasons set forth below, defendant's motion for countersecurity is denied.

### BACKGROUND

The underlying claims of the parties are subject to arbitration in New York. However, a brief summary of the dispute is

useful to place the attachment issues in context.[1]

In January 2008, plaintiff, an owner of various maritime vessels, entered into a charter party agreement with defendant for the carriage of pig iron from Ponta de Madeira, Brazil to the Mississippi River. (Compl. ¶ 5; Compl. Ex. A.) On or about June 30, 2008, plaintiff and defendant entered into a second charter party agreement. This agreement governed the carriage of pig iron from Ponta de Madeira, Brazil to Sri Racha, Thailand. (Compl. ¶ 6; Compl. Ex. B.) Thereafter, in August 2008, plaintiff and defendant entered into a third charter party agreement. Like the first charter party, this agreement governed the carriage of pig iron from Ponta de Madeira, Brazil to the Mississippi River. (Compl. ¶ 7; Compl. Ex. C.)

Each of the three charter party agreements provided that defendant would be responsible for paying "demurrage," or fees, if defendant failed to unload its cargo from plaintiff's vessel by an agreed-upon time.[2] (Compl. Exs. A–C.) According to plaintiff, defendant incurred demurrage in connection with each agreement. (Compl. ¶¶ 9–10.) The crux of plaintiff's complaint is that defendant breached the three agreements by failing to pay the demurrage. (Compl. ¶¶ 10–12.)

Defendant filed an Answer and Counterclaim, alleging breaches of separate agreements. According to defendant, in March 2007, it entered into two charter party agreements with plaintiff for the carriage of defendant's cargo from Paul, Brazil to the Mississippi River. (A & C ¶ 12.) These agreements entitled defendant to transport its cargo on plaintiff's vessels at a rate of $36.35 per metric ton of cargo. (*Id.*)

According to defendant, after the March 2007 charter party agreements were signed, vessel freight rates increased considerably. (A & C ¶ 13.) Thereafter, plaintiff allegedly took advantage of these market conditions by failing to provide the contracted—for vessels and offering plaintiff a substitute vessel at an increased freight rate of $45 per metric ton. (A & C ¶ 14.) Defendant rejected plaintiff's offer. Instead, it elected to contract for two substitute vessels, apparently from another ship-owner, at freight rates of $42.69 and $47 per metric ton. (A & C ¶ 15.)

Defendant now moves for an order directing plaintiff to post countersecurity in the amount of $833,039.64. The request includes $591,161 in security as a result of the alleged breach of the March 2007 charter party agreements, $141,878.64 in interest (six percent over four years), and $100,000 in legal expenses and costs. (A & C ¶¶ 16, 20.)

## DISCUSSION

### I. Motion for Countersecurity

■ Applications for countersecurity are governed by Supplemental Rule E(7)(a), which provides, in relevant part:

[w]hen a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given must give security for damages demanded in the counterclaim unless the

1. The following facts are drawn from the Verified Complaint ("Compl.") and the Answer and Counterclaim ("A & C").

2. Demurrage is "[l]iquidated damages owed by a charterer to a shipowner for the charterer's failure to load or unload cargo by the agreed time." *See Black's Law Dictionary* 498 (9th ed. 2009).

court [,] for cause shown, directs otherwise.

Thus, a defendant seeking countersecurity must establish, at a minimum: (1) that it has posted security for the original claim; and (2) that its counterclaim arises from the same transaction or occurrence as the original claim.

Even when the requirements of the rule are met, the district court has "broad discretion" to decide whether to order counter-security. *See Result Shipping Co., Ltd. v. Ferruzzi Trading USA, Inc.*, 56 F.3d 394, 399 (2d Cir.1995) ("Although [Supplemental Rule E(7) ] initially appears to make the posting of countersecurity mandatory whenever its conditions are satisfied, the final clause of the quoted language makes clear that the trial court possesses broad discretion in deciding whether to order countersecurity under such conditions."). However, the Second Circuit has reasoned that two principles should guide this exercise of discretion: first, the purpose of this rule is to place the parties on an equal footing in terms of security; and second, the rule is not intended to impose costs that might prevent a plaintiff from bringing suit. *See id.* at 399–400.

■ To assess whether a claim and counterclaim arise from the same "transaction or occurrence," courts apply the test for compulsory counterclaims under Federal Rule of Civil Procedure 13(a). *See, e.g., Incas & Monterey Printing & Packaging, Ltd. v. M/V Sang Jin*, 747 F.2d 958, 964–65 (5th Cir.1984); *Voyager Shipholding Corp. v. Hanjin Shipping Co., Ltd.*, 539 F.Supp.2d 688, 690–91 (S.D.N.Y.2008). As cases have often held, the application of this test is proper because the language of Supplemental Rule E(7) mirrors the language of Federal Rule 13(a).[3] *See, e.g., Incas*, 747 F.2d at 964–65; *Eastwind Mar., S.A. v. Tonnevold Reefer 7 KS*, No. 08 Civ. 3292(HB), 2008 WL 4831324, at *3–4 (S.D.N.Y. Nov. 10, 2008); *Voyager Shipholding*, 539 F.Supp.2d at 691.

■ Whether a counterclaim is compulsory under Federal Rule 13(a) is determined by "whether a logical relationship exists between the claim and the counterclaim and whether the essential facts of the claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir.1991) (internal quotations and citations omitted). In other words, courts examine whether there is: "(1) an identity of facts between the original claim and counterclaim; (2) a mutuality of proof; and (3) a logical relationship between the original claim and counterclaim." *May Ship Repair Contracting Corp. v. Oil Barge "HT–100"*, No. 08 Civ. 280(CPS)(RER), 2008 WL 6332375, at *2 (E.D.N.Y. Jan. 21, 2008); *Eastwind Mar., S.A. v. Tonnevold Reefer 7 KS*, 2008 WL 4831324, at *4.

■ Defendant urges this Court to conclude that its counterclaims arise from the same "transaction or occurrence" as plaintiff's original claims, namely "the multi-year business relationship between the parties whereby [defendant] chartered [plaintiff's] vessels for the carriage of pig iron cargoes from Brazil to U.S. and Europe." (Def. Mem. at 1.)

We disagree with defendant's position. It is apparent that there is little factual or

---

**3.** *Compare* Fed.R.Civ.P. 13(a)(1)(A) ("A pleading must state as a counterclaim any claim that ... arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim ...") *with* Supp. R. E(7) ("[w]hen a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given must give security ...").

logical overlap between plaintiff's claims and defendant's counterclaims. To be sure, the claims and counterclaims both relate to charter contracts to which plaintiff and defendant are the only parties. However, the relevant similarities end there.

Plaintiff's original claims relate to alleged breaches of the 2008 charter party agreements. The merits of the claims will turn on, for example, the demurrage terms in the 2008 charter party agreements, whether defendant took longer to unload its cargo from plaintiff's vessels than permitted under the agreements, whether defendant in fact failed to pay the demurrage, and whether defendant has a viable defense for its alleged failure to pay.

By contrast, defendant's counterclaims will turn on whether plaintiff failed to perform under the March 2007 charter party agreements. The counterclaims will require proof of whether plaintiff failed to provide the vessels, whether there was a force majeure that excused plaintiff's performance, and the additional amount, if any, that defendant was charged when it contracted for substitute vessels.

The evidence needed to successfully prosecute the claims and counterclaims will plainly differ. As a result, there would be limited efficiency if these issues were tried together. Accordingly, defendant has failed to establish that any logical relationship exists among the claims.[4]

Defendant also argues that the sets of contracts are logically related as a matter of law because they involve the same parties and relate to the same general purpose. (Def. Reply Mem. at 1, 5–6.) Having read the cases that defendant cites for this proposition, we have concluded that, when properly understood, none of the cases cited supports defendant's position. See United States ex rel. D'Agostino Excavators, Inc. v. Heyward–Robinson Co., Inc., 430 F.2d 1077 (2d Cir.1970).

Finally, defendant argues that the compulsory counterclaim test only provides guidance and that this Court should apply a more liberal test. As a threshold matter, the compulsory counterclaim test in this Circuit is repeatedly described as broad and flexible. See, e.g., Jones v. Ford Motor Credit Co., 358 F.3d 205, 209 n. 1

---

**4.** Defendant's additional arguments do not counsel otherwise. In support of its argument that the "transaction or occurrence" requirement is satisfied, defendant notes that: (1) the two parties had some history of working out past debts through subsequent contracts; (2) the 2007 charter party agreements, which form the basis of defendant's counterclaims, and the 2008 charter party agreements, which form the basis of plaintiff's original claims, were drafted using the same form contract; and (3) the claims and counterclaims will be arbitrated before the same arbitration panel. (Def. Mem. at 5–13.)

Defendant's argument that the parties have negotiated and resolved outstanding claims by "rolling them into future business" is unavailing. The fact that, in theory, the contracts could be connected does not change the fact that there is no actual connection between these sets of contracts. Similarly, the fact that the contracts were allegedly drafted using the same standard form agreement is immaterial. Defendant fails to articulate how the use of a "Uniform General Charter" establishes a logical relationship between the claims and counterclaims. Finally, we understand that the claims and counterclaims will be jointly arbitrated and that this arrangement may be convenient for defendant. However, this convenience does not establish a logical relationship among the various claims. Defendant's arguments, at their core, ignore the distinction between mandatory and permissive counterclaims. Defendant implicitly asks the Court to recognize the convenience of bringing multiple claims and counterclaims together, but our task, when reviewing a motion for countersecurity, is more narrow—we must look for the type of logical relationship that would satisfy the test for a compulsory counterclaim.

(2d Cir.2004) (citing *Moore v. New York Cotton Exchange,* 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926)); *Cabiri v. Gov't of the Republic of Ghana,* 165 F.3d 193, 197 (2d Cir.1999). And indeed, defendant's failure to satisfy the compulsory counterclaim test results not from the narrow nature of the test, but from the fact that the claims and counterclaims share no realm of genuine dispute. However, even if this Court were to ignore Rule 13(a) jurisprudence and examine the language and purpose of Supplemental Rule E(7) alone, defendant's motion would still be denied.

It is inescapable that the text of Supplemental Rule E(7) requires that the counterclaim arise from the same "transaction or occurrence" as the original claim. Even under the most expansive reading of this language, it would stretch these terms past their breaking point to conclude that they could encompass the attenuated connection present in this case.[5]

## II. Request to Vacate Security

■ Defendant argues that the Court should vacate its original security order if plaintiff is not required to post countersecurity. Defendant's support for this request is minimal, further exposing the purely tactical nature of this motion. We deny defendant's request for the following reasons.

First, Supplemental Rule E(7) does not contain an absolute requirement that the parties be on equal footing, as evidenced by the plain language of the rule, which provides that a counterclaim must be part of the same "transaction or occurrence" as the original claim. Supp. R. E(7). Second, if precise equality were required, courts would not have discretion to review motions for countersecurity and would be unauthorized to deny these motions, a plainly nonsensical conclusion. Finally, the authorities cited by defendant are inapposite. The cases cited merely support the proposition that this Court would have the power to vacate its original security order if plaintiff abused the judicial process. *See Voyager Shipholding,* 539 F.Supp.2d at 694 (noting that the court could vacate the countersecurity order if the defendant failed to prosecute its counterclaims before an arbitration panel); *Coloured Fin Ltd. v. Readymix Abu Dhabi Ltd.,* No. 08 Civ. 9559(DC), 2009 WL 3178861 (S.D.N.Y. Oct. 2, 2009) (vacating a security order where the plaintiff advised the court that it did not intend to comply with a previously-entered countersecurity order). There are no such improper acts here.

In sum, defendant's request would involve the Court in the unseemly and unwarranted task of equalizing litigation advantages, rather than applying Supplemental Rule E(7). The Court declines to do this.

## *CONCLUSION*

For the foregoing reasons, defendant's motion for countersecurity and its request to vacate the original security order are denied.

---

**5.** Here, defendant endeavors to link isolated contracts by arguing that they are part of a single macro-agreement (*i.e.,* the multi-year business relationship between the parties during which defendant entered into various contracts to use plaintiff's vessels). However, this reasoning is foreign to contract law and, for the reasons stated above, does not satisfy the requirements of Supplemental Rule E(7). In fact, defendant's analysis seems more akin to a conspiracy theory—in which a party posits that isolated acts are part of a larger agreement—than an attempt to argue that the claims and counterclaims arise from the same transaction or occurrence.